**UNITED STATES of America, Appellee,**

v.

**William Mirl JARBOE, Appellant.**

**No. 74–1557.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1974.

Decided March 24, 1975.

Rehearing Denied April 14, 1975.

---

Lane D. Bauer, Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and SCHATZ, District Judge.*

SCHATZ, District Judge.

William Mirl Jarboe was found guilty by a jury of aiding and abetting the commission of a bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(a),[1] and he brings this appeal alleging the trial judge gave erroneous and prejudicial instructions to the jury.

In August of 1972, the defendant Jarboe was paroled from the Oklahoma State Penitentiary where he had been acquainted with one James Al'in Klein.

---

* ALBERT G. SCHATZ, United States District Judge, District of Nebraska, sitting by designation.

1. 18 U.S.C. § 2:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
18 U.S.C. § 2113(a):
(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—
Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

In September, 1972, Klein escaped from prison and contacted the defendant in Louisiana, where he was working. The defendant and Klein later met in Oklahoma and traveled together to Missouri during which time Klein told the defendant of a successful bank robbery he had accomplished in Dallas, Texas, and an unsuccessful bank robbery he and another man had attempted in San Diego, California. On October 20, 1972, Klein entered a bank in Independence, Missouri, and took money at gun point from one of the tellers. Klein fled from the bank on foot to a location about two blocks away where the defendant was waiting in a car. Klein entered the car with the money and the defendant drove away. They returned to the motel in Independence in which they were staying, disposed of the car, and later that same day they traveled to Topeka, Kansas, and ultimately to San Antonio, Texas. There Klein gave the defendant $500 and the two men parted company. Klein and Jarboe were later apprehended separately and an indictment was returned against both men charging each with two counts of bank robbery and one count of interstate transportation of a stolen motor vehicle. Klein pled guilty to all three counts and the trial proceeded against the defendant Jarboe alone. The government's case against the defendant was based on the aider and abetter statute, 18 U.S.C. § 2, since there was no evidence that he entered the bank while the money was being stolen. Only Count I, alleging violations of 18 U.S.C. §§ 2 and 2113(a), was submitted to the jury and the defendant was found guilty.

At the trial the defendant did not contest the fact of the robbery or that he was in the places at the times alleged by the government. His testimony was that Klein had sought him out in Louisiana, had forced him to go from Oklahoma to Independence, Missouri, to this particular bank, and that Klein had stolen the money without telling the defendant in advance of his intention to do so. He further testified that he was shocked when Klein jumped into the car with the bank's money and that Klein forced him to accompany and assist Klein until they split up in Texas. On cross-examination, however, the defendant admitted that when Klein told the defendant to let him out of the car near the bank just prior to the robbery, the defendant knew that Klein intended to "case" the bank and the defendant was aware of Klein's recent efforts to rob Texas and California banks.

The legal theory upon which the defense was based was that the robbery was complete at the moment Klein left the bank, and that even if, after that moment, the defendant intended to assist Klein, the defendant could not then be an aider and abetter of Klein in the bank robbery, but was at most an accessory after the fact. At the close of the evidence, the defendant requested Instruction No. 17, which he felt embodied this legal theory. The trial judge modified the instruction by adding the italicized portion below and gave it as follows:

Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find beyond reasonable doubt that the defendant was a participant and not merely a knowing spectator.

To convict the defendant William Mirl Jarboe of aiding and abetting bank robbery, you must find beyond a reasonable doubt that at the time of the actual robbery Jarboe shared defendant James Allen Klein's specific intent to *examine and* rob the Chrisman-Sawyer Drive-in Bank, *on October 20th, 1972, or at some time in the reasonably near future, but it is not necessary that you find beyond a reasonable doubt that the defendant Jarboe knew that James Allen Klein intended to rob said bank in the early afternoon of October 20th, 1972, while defendant Jarboe waited in the Cadillac automobile on Englewood Court Street.*

The trial judge then gave Instruction No. C–2 of his own composition:

You are further instructed that the act of escaping with the money stolen in a bank robbery is a substantial element of the crime of bank robbery. Therefore, if the evidence proves beyond a reasonable doubt that the accused Jarboe knowingly, intentionally and willfully aided James Allen Klein in escaping after the robbery of the Chrisman-Sawyer Drive-in Bank, the accused Jarboe is guilty of the offense of bank robbery, even if Jarboe did not know the bank robbery was going to take place while he waited in the Cadillac on Englewood Court.

The defendant argues that the above instructions are incorrect as a matter of law, and that the giving of these instructions and the refusal of the tendered No. 17 denied the defendant the opportunity to have the jury consider a valid legal theory.

These instructions told the jury, in effect, that it should convict the defendant if it found either of two situations to have occurred:

1) If at the time the money was taken the defendant shared Klein's intent to examine and rob the bank on that day or at some time in the reasonably near future; or

2) If after the taking of the money by Klein, the defendant aided Klein in escaping.

In Johnson v. United States, 195 F.2d 673 (8th Cir. 1952), this court explained the requirements for conviction under the aider and abetter statute:

To be an aider and abetter it must appear that one so far participates in the commission of the crime charged as to be present, actually or constructively, for the purpose of assisting therein. Thus, one who gives aid and comfort, or who commands, advises, instigates or encourages another to commit a crime may be said to be an aider and abetter. Generally speaking, to find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term "aiding and abetting" implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient.

195 F.2d at 675.

The language "in furtherance of the common design, either before or at the time the criminal act is committed" clearly encompasses the first situation above and that described in Instruction No. 17. This language has recently been repeated with approval, United States v. Untiedt, 493 F.2d 1056 (8th Cir. 1974), and there was no error in giving an instruction embodying these principles.

Instruction C–2, which described the second possible situation above, is directly at odds with the defendant's theory of the law. The defendant relies upon United States v. Irving, 141 U.S.App.D.C. 216, 437 F.2d 649 (1970), in which the Court of Appeals held that the following example given by the trial judge to the jury described the offense of accessory after the fact under the District of Columbia Code, not the offense of aiding and abetting:

Further, though, if B came out of the bank and said, "I have just robbed it, I have got this sack full of money, let's go," and then B got in A's car and A took off and ran knowing that the crime had been committed, and helping in the escape, he could be liable (as an aider and abetter).

437 F.2d at 650.

Insofar as *Irving* suggests that a robbery is complete prior to the immediate escape, and hence that no further aiding and abetting could occur at that point, we do not feel that it is correct. In

United States v. Pietras, 501 F.2d 182 (8th Cir. 1974), we held that the offenses described in 18 U.S.C. § 2113(d) and (e) extend at least to the hot pursuit following the physical departure from the bank, a pursuit which in that case extended to a nearby town for a period of something less than half an hour:

> While the interpretation urged by Pietras might be placed upon the language of the statute, there is nothing in the legislative history of the original Bank Robbery Act to suggest that the two sections were to receive diverse treatment. S.Rep.No. 537, 73d Cong., 2d Sess. (1934); H.Rep.No. 1461, 73d Cong., 2d Sess. (1934); H.Rep.No. 1598, 73d Cong., 2d Sess. (1934); 78 Cong.Rec. passim (1934). Indeed the letter of explanation by the then Attorney General who recommended the bill suggests that the two sections were nearly coterminous. However, lest no effect be given to § 2113(e)'s additional reference to "avoiding . . . apprehension" and "freeing himself . . . from confinement" contingencies, we hold that "committing any . . . (robbery)" as used in both § 2113(d) and § 2113(e) extends at least to a hot pursuit that follows the physical departure from the bank building. In this respect we affirm the reasoning of the district court in denying Pietras' motion for a mistrial:

> > (Y)ou cannot complete your taking until you have terminated the possibility of the item being recovered, it would appear to me an escape effort immediately following . . . the taking is a part of the taking process. . . .. 501 F.2d at 187.

We now hold that the offense described in 18 U.S.C. § 2113(a) extends for a similar period—i. e., hot pursuit—and that Instruction C–2 as given by the trial judge in this case was correct.

■ After deliberating for approximately two hours, the jury sent the trial judge a note requesting clarification of the instructions concerning the defendant's actions after the money was taken by Klein from the bank. After consultation with counsel, the trial judge re-read certain of the instructions, including Nos. 17 and C–2, and added No. C–4, which read:

> If you find that after the commission of a crime of bank robbery by Klein the defendant Jarboe "continued to be related to" Klein and that defendant Jarboe did not "attempt to disclose information willingfully to proper authorities," these circumstances can be considered by you together with all the other facts and circumstances in evidence in determining the guilt or innocence of Jarboe. These circumstances do not, standing alone, prove that the defendant is guilty of the offense charged. If, however, the evidence proves beyond a reasonable doubt that the defendant willfully, knowingly, and intentionally participated in the commission of the bank robbery by aiding Klein in commission of the robbery, or in escaping with the stolen money after the bank robbery, the accused Jarboe is guilty of the offense of bank robbery. If you find that the evidence does not prove beyond a reasonable doubt that Jarboe willfully, knowingly and intentionally participated in the commission of the bank robbery or in escaping with the stolen money after the robbery, you should acquit him.

In light of the previous discussion, we find no error in the re-reading of Nos. 17 and C–2 or in the addition of C–4. Admittedly, the phrase "escaping with the stolen money after the robbery" was somewhat imprecise since the escape was a part of the robbery, but the instruction as a whole was sound and did not prejudice the defendant nor preclude him from having a fair trial.

Accordingly, we affirm the judgment of conviction.